IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| RELATIONAL, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 07-CV-415 |
| v. | ) | |
| ROBERT A. HODGES, | ) | JUDGE DAVID H. COAR |
| RICHARD J. HODGES, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on a motion to vacate the default judgment entered against Defendant Robert A. Hodges ("Defendant Hodges") on August 17, 2007. Defendant Hodges seeks relief pursuant to Federal Rule of Civil Procedure 60(b)(4). For the reasons stated below, Defendant's motion is **DENIED**.

I. **BACKGROUND**

On September 21, 2005, Defendant Hodges and his brother Richard Hodges entered into a Personal Guaranty with Relational, LLC. Under the terms of the agreement, the Hodges brothers pledged to personally guarantee up to $750,000 of the financial obligations of Laminate, Kingdom, LLC, their struggling flooring business. By January 11, 2005, Laminate's creditors had filed an involuntary petition for bankruptcy relief in the Southern District of Florida, which the Florida court granted on January 25, 2007. At that point, Laminate owed Relational well over $750,000. On February 1, 2007, Relational filed an enforcement action with this Court, alleging a breach of the Guaranty.

1

Immediately after initiating this action, Relational attempted to serve process on Defendants pursuant to the terms agreed upon in the Guaranty. The Guaranty provides, in relevant part:

> . . . service of summons or other process in any proceeding against Guarantor may be made upon Guarantor by registered or certified mail . . . to Guarantor at his primary residential address: to Robert A. Hodges at 280 Arvida Parkway, Miami, FL 33156 and Richard J. Hodges at 220 Leucadendra Drive, Miama, FL 33156

Pl. Br., Exhibit 1, Personal Guaranty at 1-2. Relational mailed the complaint, summons, and attachments to both Defendants' Florida addresses provided in the Guaranty, but mail carriers found the residences vacant and returned the packages to Relational's counsel.

Following its first failed attempt to effectuate service of process, Relational enlisted a process server to locate and personally serve Defendants in the United States. The process server could neither find nor serve either Defendant. However, through contacts with Florida bankruptcy counsel, Relational learned that Defendant Hodges had sold his Florida home and returned to the U.K. without providing Laminate's trustee or creditors—including Relational—with a forwarding address or any contact information. Throughout early 2007, Defendants could not be located by either the Florida Bankruptcy Court or their own bankruptcy counsel. Indeed, several months after filing an appearance in Defendants' bankruptcy proceeding, Defendants' counsel withdrew because they were unable to locate Defendants. The Florida Bankruptcy Judge then threatened both Defendants with civil contempt if they failed to appear for their Noticed Rule 2004 Depositions.

Despite its failed efforts to serve process in Florida, Relational hired an investigation firm, Nicholls Investigation Services, to locate Defendant Hodges in the U.K.[1] Relational's investigation revealed a residential address for Defendant Hodges at 20 Margaret Grove, Harborne, Birmingham, B18, 9JH. Accordingly, on May 10, 2007, Nicholls's process server, Karen Johns, tendered the complaint and attached documents to that address. On May 15, 2007, Johns signed a return of service and an affidavit swearing under oath that she served Defendant Hodges at 20 Margaret Grove, where he identified himself and thanked her. The Court received no response from Defendant Hodges or anyone representing him.

Several months later, Winston & Strawn's London office began to receive letters from two firms of English solicitors writing on behalf of Defendant Hodges's grandmother and aunt. The solicitors, R. McVeighty and attorneys from England, Strickland, & Neale, stated that 20 Margaret Grove was the residence of Defendant Hodges's grandmother, Joan Hodges, and that the complaint and documents had been either left on her doorstep or served upon an unknown individual. They stated further that Mrs. Hodges had no knowledge of Defendant's whereabouts, she had not seen him for at least two years, and she was unable to forward the documents to Defendant.

During a status conference on June 21, 2007, Relational's counsel informed the Court that, although U.K. solicitors sent them letters claiming that Defendant's grandmother received the process intended for Defendant, they believed he had been properly served. In response, the Court requested that Relational file a motion for default

---

[1] Relational was never able to secure personal service on Richard Hodges, and the case against him was dismissed on December 4, 2007. Prior to returning to the U.K., however, Richard Hodges admitted under oath that both he and his brother were liable to Relational under the terms of the Guaranty.

judgment as to Defendant Hodges. Accordingly, on July 12, 2007, Relational presented its motion to the Court, arguing that Defendant Hodges was personally served with process, that he failed to respond, and that his silence indicated "a willful disregard for this litigation and procedures of this Court." Mot. for Default Judgment, at 4. Although the motion for default judgment was sent by mail to Defendant Hodges' business address and by both mail and courier to 20 Margaret Grove, the Court received no response and entered a default judgment against Defendant Hodges in the amount of $750,000 on August 17, 2007.

On November 6, 2007, Relational served a Statutory Demand in the U.K. based on the $750,000 debt Defendant Hodges and his brother owed Relational under the Guaranty. Relational again faced difficulty serving Defendant; Defendant refused to accept personal service, forcing Relational to attempt substituted service before Defendant finally accepted service via his solicitor. After Relational struggled to effectuate process, and the Hodges sought several extensions, the U.K. Court was finally prepared to hear the merits of the Statutory Demand on October 31, 2008. In this hearing, the Hodges faced the burden of showing that their obligations under the Guaranty were the subject of a dispute of substance. The day before the hearing, Defendant Hodges filed the instant motion to vacate default judgment, claiming that he was never properly served, the Court never obtained personal jurisdiction over him, and therefore the judgment entered against him was void. This Court held an evidentiary hearing on Defendant's motion on February 2, 2009.

II. **ANALYSIS**

Under Federal Rule of Civil Procedure 60(b)(4), a party may obtain relief from a final judgment if the "judgment is void." Fed. R. Civ. P. 60(b)(4). A judgment is void for the purposes of Rule 60(b)(4) if the court that issued the judgment lacked personal jurisdiction over the defendant. *Robinson Engineering Co. Pension Plan and Trust v. George*, 223 F.3d 445, 448 (7th Cir. 2000). As the court obtains personal jurisdiction over parties though effective service of process, a judgment is void as to any party who was not adequately served. *See Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 808 (7th Cir. 1969); *Flowers v. Klatick*, No. 93 C 6606, 2004 WL 2005814, at *1 (N.D. Ill. Sept. 1, 2004); *Fleet Mortgage Corp. v. Wise*, No. 92 C 1102, 1997 WL 305319, a *1 (N.D. Ill. May 29, 1997).

The Court's resolution of the instant motion hinges on whether Defendant Hodges was properly served with process. Courts consider a signed return of service or an affidavit of service prima facie evidence that service was properly effectuated. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993); *Fleet Mortgage Corp.*, 1997 WL 305319, at *2. Such prima facie evidence may be "overcome only by strong and convincing evidence." *O'Brien*, 998 F.2d at 1398 (internal quotations and citation omitted); *see also Fleet Mortgage Corp.*, 1997 WL 305319, at *2; *Winning Moves, Inc. v. Hi! Baby, Inc.*, 605 N.E.2d 1026, 1029 (Ill. App. Ct. 1992) (observing that prima facie proof of proper service "can only be overcome by clear and convincing evidence" and that "the court is required to indulge in every reasonable presumption in favor of the return").

By providing both a signed return of service and an affidavit of service,

Relational has presented prima facie evidence that it properly served process on Defendant Hodges. Relational's process server, Karen Johns, signed the return of service on May 15, 2007, swearing that she personally served Defendant Hodges on May 10, 2007. In addition, Johns provided an affidavit of service swearing that Defendant Hodges identified himself, and once served with process, made no other comment than to thank her. Bolstering this prima facie evidence of service, Relational presented a more detailed affidavit from Johns during the evidentiary hearing on February 2, 2009. Unwilling to travel to the United States to testify in person, Johns instead offered an affidavit that more completely described her interactions with Defendant on May 10, 2007 and included his physical characteristics. In her affidavit, Johns stated:

> I rang the doorbell and the door was answered by a Caucasian clean shaven male person aged approximately 40 years of medium build and average height. I asked for Robert A. Hodges the person named in the summons and this person confirmed he was the Individual I was looking for. I handed the documents to him, he accepted the documents from me, said thank you and closed the door.

Second Johns Affidavit, at 2. Johns also stated that she has been employed by Nicholls Investigation Service for over 12 years, and no party has ever challenged her as to the service of documents upon them. *Id.* at 1. Corroborating this statement, Mark Nicholls testified to Johns's strong reputation for credibility during the evidentiary hearing. Transcript of Evidentiary Hearing, February 2, 2009, (hereinafter "Tr.") 54-55. Nicholls testified, specifically, that while working with Johns on numerous occasions over the last 12 to 15 years, he has never encountered any issues concerning her service of process. Tr., at 54-55.

6

Defendant Hodges offers no evidence challenging Johns's credibility, and moreover, fails to present "clear and convincing" evidence necessary to overcome Relational's prima facie demonstration that process was served. *O'Brien*, 998 F.2d at 1398. Arguing that he was never personally served with process, Defendant Hodges relies heavily upon letters sent to Winston & Strawn's London office from two firms of English solicitors representing his grandmother and aunt. In these letters, the solicitors informed Relational that the process intended for Hodges was delivered to his grandmother's home; accordingly, it did not—and would not— reach Defendant. Defendant Hodges also offered the affidavit of his grandmother, Joan Hodges, who swears that she found a large envelope of documents on her doorstep on May 10, 2007, and as of that date, she had not seen Defendant Hodges for approximately two years. Supplemental Aff. of Joan Hodges, at 3.

This evidence does not convince the Court that Relational failed to effectively serve process on Defendant Hodges. Indeed, this Court already considered the English solicitors' correspondence with Relational and found this evidence unpersuasive when the default judgment was entered against Defendant Hodges. The Supplemental Affidavit of Joan Hodges adds nothing new and simply reiterates the position expressed in her solicitors' letters. Moreover, even if Defendant Hodges was not personally served at 20 Margaret Grove, the Court finds it unlikely that Defendant was not informed of the matter pending against him by his grandmother, aunt, or their solicitors. One of the English firms involved, England, Strickland, & Neale, has represented the Hodges family for many years. Although Defendant Hodges first denied ever characterizing this firm as "our family solicitors," he then admitted that he offered this characterization during

7

bankruptcy proceedings in the U.K.  Tr., at 35-36.  It is difficult to believe that Defendant Hodges did not share his relatives' and family solicitors' awareness of the case pending against him.

The Court finds the other evidence and arguments presented by Defendant Hodges even less compelling.  During the evidentiary hearing, Hodges testified that on May 10, 2007, he was living with his wife and children 16 miles away from his grandmother's residence at 20 Margaret Grove.  Tr., at 9.  He claimed that, at the time, his routine involved spending every afternoon at a pub called the Punch Bowl, which was also located about 16 miles from his grandmother's home.  Tr., at 11, 14.  Hodges testified that, consistent with his routine, he was at the Punch Bowl at the time process was served at 20 Margaret Grove.  *Id.* at 11.  To corroborate this testimony, he offered a credit card statement that lists a charge to the Punch Bowl for 71.20 pounds on May 10, 2007.  *Id.*; Evidentiary Hearing, Defendant's Exhibit 5.  Defendant Hodges's credit card statement, however, does not eliminate the possibility that he was personally served at 20 Margaret Grove at 4:00pm on May 10, 2007.  First, there is no time attributed to the May 10 charge to the Punch Bowl.  Second, the statement as a whole offers no support for Defendant's testimony that his routine involved visiting the Punch Bowl every afternoon.  The statement, which covers April 27 through May 19, 2007, lists only two charges to the Punch Bowl.  *Id.*  The Court finds neither Defendant's credit card statement nor his related testimony persuasive.

Finally, this Court is not inclined to assign great weight to Defendant Hodges's testimony given his behavior leading up to this matter and his demeanor in court.[2] When Defendant Hodges relocated from Florida to the U.K. in December of 2006, he abandoned his financial obligations in the United States. Despite having personally guaranteed the debt that his bankrupt business owed Relational, Defendant left Relational neither a forwarding address nor contact information. Tr., at 32. At the same time, Defendant abandoned his bankruptcy proceeding in Florida without even providing a forwarding address to his own counsel. Tr., at 32-33. Apparently, Defendant Hodges's conduct in the U.K. has been "more of the same." Despite the very real possibility that Defendant has never actually resided at 20 Margaret Address, this address was and continues to be officially listed as his residential address in the U.K. Section 288 of the UK Companies Act of 1985 requires all companies to provide the government's Companies House Registry with the up-to-date addresses of all officers and directors. Defendant admits that it is his responsibility to update the Registry on behalf of his companies. Tr., at 46. Yet, searches of both 2006 and 2008 versions of the Companies House Publication list the Defendant's "usual residential address" as 20 Margaret Grove. Pl. Br., Exhibits 12, 13. In addition, Defendant seems intent on avoiding his U.K. bankruptcy proceeding. At first, Defendant delayed the U.K. proceeding by dodging service and seeking several extensions. When the U.K. Court was finally set to hear the merits of the case, Defendant filed the instant motion the day before the scheduled proceeding and almost a year after he claimed to have received notice of the default

---

[2] While testifying during the evidentiary hearing, Defendant Hodges made several statements contradicting prior testimony. *See* Tr., at 25-26, 33, 35-36.

judgment entered against him. Tr., at 16. The suspicious timing of Defendant's motion raises additional doubt as to his credibility.

Taken together, the English solicitors' correspondence with Relational's counsel, the affidavit of Defendant's grandmother, and Defendant's testimony do not constitute the kind of "clear and convincing" evidence necessary to overcome Relational's prima facie demonstration that process was properly served. If there remains doubt, however, that the process server physically handed process to Defendant at 20 Margaret Grove on May 10, 2007, the Court notes that Defendant's active avoidance of contact with Relational made service of process unusually challenging. Addressing a similar situation, the Seventh Circuit noted that the defendant "cannot now complain about plaintiff's failure to notify her of the lawsuit when the failure was a result of defendant's own actions." *Credit Alliance Corp. v. Campbell*, 845 F.2d 725 (7th Cir. 1988). Despite any inkling of doubt as to service of process, the Court has not received "clear and convincing" evidence that defeats the prima facie proof of service provided by the process server's signed return of service and sworn affidavits. *See O'Brien*, 998 F.2d at 1398.

Although Relational argues that Defendant Hodges waived his right to personal service of process by agreeing to the terms of the Personal Guaranty, and Defendant has spent considerable energy refuting this argument, the Court finds it unnecessary to determine whether Defendant, in fact, waived this right. Regardless of whether Defendant waived his right to personal service of process, this Court finds that Defendant was properly served with process, and therefore, the Court had personal jurisdiction over Defendant when the default judgment was entered against him.

III. **CONCLUSION**

For the foregoing reason, Defendant Robert A. Hodges's motion to vacate the default judgment against him is **DENIED.**

Dated:   September 29, 2009                    ENTER:

                                              /s/David H. Coar
                                              David H. Coar, U.S. District Judge